UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
UNITED STATES OF AMERICA,

-against-

MARLON THOMPSON,

                                                                    Defendant.
----------------------------------------------------------------------X

**For Online Publication Only**

**MEMORANDUM**
**AND ORDER**
19-CR-596 (JMA) (JMW)

FILED
CLERK

11:56 am, Dec 05, 2022

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**AZRACK, United States District Judge:**

Before the Court is the motion of Defendant Marlon Thompson ("Defendant") to suppress physical evidence seized by, and incriminating statements made to, law enforcement during and after a search of Defendant's vehicle. Defendant contends that suppression of this evidence is warranted because: (i) the vehicle stop was unlawful; (ii) the search was illegal; and (iii) the statements were unlawfully coerced by law enforcement. (See Defendant's Memorandum of Law in Support of Defendant's Motion to Suppress Evidence from a Motor Vehicle Stop ("Def. Mem."), ECF No. 58-1.) For the following reasons, Defendant's motion to suppress is DENIED in its entirety.

## I.    FINDINGS OF FACT[1]

On November 3, 2022, the Court held a suppression hearing on Defendant's motion. At the hearing, the Government offered the testimony of two witnesses – Police Officer David Young and Detective Brian Draiss. The Court finds that the testimony of both witnesses was credible and

---

[1] The Court assumes familiarity with the background of this case and discusses only those facts that are pertinent to the resolution of Defendant's motion.

1

credits all of their testimony. The key aspects of their testimony are highlighted in the below Findings of Fact.[2]

A. <u>**The November Car Stop**</u>

At approximately 11:00 p.m. on November 15, 2018, Officer Young and his partner, Officer Nicholas Divaris (the "Officers"), both members of the Suffolk County Police Department's 4th Precinct Gang Unit, were on patrol in Ronkonkoma, Long Island. (Tr. 6.[3]) The Officers, who were in an unmarked car and wearing plain clothes, observed a BMW (the "BMW") in front of a house that the Officers knew to be a site of drug-dealing activity. (Tr. 6-7.)

The Officers followed the BMW as it drove away from the house and observed it driving erratically – the BMW was suddenly slowing almost to a complete stop and straying to the side of the road. (Tr. 7-9.) The Officers next observed the BMW make a lefthand turn without using its turn signal, prompting the Officers to activate their emergency lights and pull the BMW over (the "November Car Stop"). (Tr. 9.) Officer Young approached the driver's side of the BMW. When the driver's window opened, he observed the Defendant sitting in the driver's seat with no one else in the BMW. (Tr. 9-10.) The Officers immediately smelled marijuana and observed a burnt marijuana cigarette in an ashtray in the center console. Officer Young next asked for Defendant's license and registration, and subsequently found that Defendant's license was suspended.

At that point, the Officers asked the Defendant to exit the BMW and proceeded to pat him down for their safety before transporting him to the 4th Precinct. As Officer Young moved his hands near the Defendant's waistband, he felt a large, hard object, and was immediately concerned

---

[2] Defendant neither offered any witnesses nor testified on his own behalf, at any point during the hearing. Further, when compared with the testimony adduced at the hearing, the Court finds that the affidavit submitted by Defendant in support of his motion to suppress is not credible.

[3] Citations to "Tr." refer to pages of the transcript of the suppression hearing held on November 3, 2022.

2

about the possibility of a firearm. (Tr. 12.) Officer Divaris reached beneath the defendant's waistband and recovered a hard, tan chunk of fentanyl in a plastic baggie. (Tr. 12-13.)

**B.     The Post-Arrest BMW Inventory Search**

While the Defendant was being transported back to the 4th Precinct, other officers secured the BMW and brought it back to the 4th Precinct to be impounded. (Tr. 20.) Officer Young performed an inventory search of the BMW and recovered a card from a public storage facility (the "Public Storage Card") from a duffle bag in the trunk of the BMW. (Tr. 21.) After completing the inventory search, at Defendant's request, the Officers arranged for Defendant's girlfriend to pick up personal property recovered from the BMW. (Tr. 21.)

**C.     Defendant's Post-November Car Stop Statements**

Upon arrival at the 4th Precinct, the Officers brought Defendant to an interview room. Suffolk County Police Department detectives Brian Draiss and Joseph Mucha debriefed the Defendant. Before doing so, at approximately 1:00 a.m., Detective Draiss read Defendant his Miranda warnings from a card. (Tr. 53-54.) After each warning, Defendant placed his initials on the card, to indicate that he understood each right, and verbally affirmed that, even after receiving those rights, he wanted to speak to Detectives Draiss and Mucha. Detective Draiss wrote "yes" to memorialize this statement and Defendant then signed the card himself. (Tr. 54-59.)

Detective Draiss then immediately read from an advice of rights form, which again warned Defendant of the constitutional rights he would be waiving if he spoke to the detectives, and Defendant initialed and signed the form. (Tr. 59-60.) Defendant then spoke to the detectives and admitted that, while he had a little bit of weed in the BMW, the remaining drugs and fentanyl found in his waistband belonged to an individual named "Pete." (Tr. 60-64.) Detective Draiss reduced this statement to writing. Defendant was given the opportunity to read the statement, and made several alterations, which he initialed. (Tr. 64-65.) When asked if he would sign the statement,

3

Defendant admitted that it was true but refused to sign it until the next morning, after he had spoken to a lawyer. (Tr. 65-66.) Detective Draiss memorialized this response on the sheet as well. From beginning to end, Defendant's interaction with the detectives who took his statement lasted approximately an hour.

**D.    Procedural Posture**

Defendant was arrested on May 2, 2019. A subsequent search of his residence and the Storage Unit yielded narcotics and numerous firearms. On August 29, 2022, Defendant, through counsel, filed the instant suppression motion seeking suppression of any evidence resulting from the November Car Stop. Specifically, Defendant contends that: (1) the November Car Stop was unlawful; (2) the search of the BMW was unconstitutional; and (3) Defendant's post-arrest statements to law enforcement were made involuntarily and in violation of his Miranda rights. This Court held a hearing on Defendant's suppression motion on November 3, 2022. After reviewing the evidence and weighing the credibility of the witnesses, the Court denies Defendant's motion to suppress in its entirety.

## II.    LEGAL STANDARD

Generally, a defendant who moves to suppress evidence that he contends derives from an illegal search "bears the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." United States v. Cruz, No. 20-cr-321, 2021 WL 4482658, at *7 (E.D.N.Y. Aug. 13, 2021), report and recommendation adopted, 2021 WL 4480667 (E.D.N.Y. Sept. 30, 2021) (quoting United States v. Osorio, 949 F.2d 38, 40 (2d Cir. 1991)). To defeat a suppression motion, "[t]he Government bears the burden of proof as to establishing probable cause" or reasonable suspicion. United States v. Zayas, No. 22-cr-178, 2022 WL 16737223, at *3 (S.D.N.Y. Nov. 7, 2022) (quoting United States v. Delossantos, 536 F.3d 155, 158 (2d Cir. 2008)). The Government must make this showing "by a preponderance of the evidence."

4

Zayas, 2022 WL 16737223, at *3 (quoting United States v. Matlock, 415 U.S. 164, 177 n. 14 (1974)).

### III.    CONCLUSIONS OF LAW

#### A.    The November Car Stop Was Lawful

The government contends that the November Car Stop was lawful because the Officers observed the driver commit a traffic infraction when the car turned without signaling.

It is well-settled that police officers may stop a vehicle for committing a traffic infraction, however minor.  See United States v. Esters, No. 21-cr-398, 2022 WL 16715891, at *9 (E.D.N.Y. Nov. 4, 2022) (citing United States v. Scopo, 19 F.3d 777, 782 (2d Cir. 1994)); United States v. Echevarria, 692 F. Supp. 2d 322, 336 (S.D.N.Y. 2010) ("Even a minor traffic offense is sufficient to justify stopping the driver of a vehicle").

Defendant first contends that "he did in fact signal," and that, as such, the November Car Stop was unreasonable and unconstitutional.  (Def. Mem. at 4.)  This argument fails because the Court has credited Officer Young's testimony that he observed the BMW fail to signal before initiating a turn.  As such, probable cause existed for the officers to initiate the November Car Stop.

Moreover, even if the Court were to assume Thompson did, in fact, signal before making that turn, the November Car Stop would still lawful based on additional factors.  The Officers also observed:  (1) the BMW leaving a known drug-dealing location late at night; coupled with (2) its "erratic driving," specifically the car slowed down to the point of nearly stopping, and strayed to the side of the road.  Those facts provided the Officers with – at the very least – reasonable suspicion to justify a brief investigatory stop.  See Zayas, 2022 WL 16737223, at *4.  Probable cause was subsequently established once the Officers approached the BMW, immediately smelled and observed marijuana, and soon after discovered that the Defendant did not have a valid license. See United States v. Miller, No. 18-cr-395, 2019 WL 2088248, at *4 (E.D.N.Y. May 13, 2019);

United States v. James, No. 10-cr-1293, 2011 WL 6306721, at *5 (S.D.N.Y. Dec. 16, 2011). Based on this case law and the credible testimony at the hearing, the Court concludes that the November Car Stop was lawful and denies the first prong of Defendant's motion to suppress.

**B.     Defendant's Statements Were Made Voluntarily After Valid *Miranda* Warnings**

Defendant next avers that his statement to law enforcement was coerced, and that he did not validly waive his Miranda rights. It is well settled that a defendant's confession to law enforcement is inadmissible "if it was obtained by 'techniques and methods offensive to due process, or under circumstances in which the suspect clearly had no opportunity to exercise a free and unconstrained will.'" United States v. Levy, 217 F. Supp. 3d 643, 661 (E.D.N.Y. 2016) (quoting Oregon v. Elstad, 470 U.S. 298, 304, 105 S. Ct. 1285, 1290 (1985)). Courts typically consider the totality of circumstances when determining whether a confession was voluntary or coerced. See id. at 661-62. When making such a determination, courts analyze: (i) the characteristics of the accused; (ii) the conditions of interrogation; and (iii) the conduct of law enforcement officials. See id. at 669 (finding confession voluntary because – among other things – defendant had been arrested on six prior occasions and he failed to establish that he was subjected to any coercive conditions of interrogation). Similarly, it is further settled that the reasonable use of handcuffs does not render a confession involuntary, because "the fact of custody alone has never been enough in itself to demonstrate a coerced confession." United States v. Sylla, No. 08-cr-906, 2010 WL 582575, at *9 (E.D.N.Y. Feb. 16, 2010).

Applying these standards to the credible hearing testimony, the Court concludes that the Defendant's statement to law enforcement was given voluntarily, after a valid waiver of his Miranda rights. The hearing testimony established that the detectives who interviewed Defendant provided him with ample Miranda warnings and the opportunity to review his waiver of rights, which was memorialized with Defendant's initials and signature on the Miranda card. Further,

Defendant offered no evidence at the hearing to refute the credible testimony regarding his waiver of rights and the voluntariness of his statement. Based on these facts, the Court concludes that his statement to law enforcement was voluntary and preceded by a valid waiver of his Miranda rights. Accordingly, the Court denies the second prong of Defendant's motion to suppress.

C. **The Post-Arrest Search of the BMW was Constitutional**

Defendant finally argues that law enforcement's post-arrest search of the BMW was unconstitutional because it was performed without his consent, "and any evidence therefrom must be suppressed." (Def. Mem. at 6.) Defendant's arguments are again misplaced. "It is well established that police have the authority, despite the absence of a warrant, to seize and remove from the streets automobiles in the interests of public safety and as part of their community caretaking functions—an authority that is beyond reasonable challenge." United States v. Lyle, 919 F.3d 716, 728 (2d Cir. 2019); see also United States v. Zimmerman, 480 F. Supp. 3d 446 (E.D.N.Y. Aug. 17, 2020). Moreover, "[w]hen law enforcement officials take a vehicle into custody, they may search the vehicle and make an inventory of its contents without need for a search warrant and without probable cause." Zimmerman, 480 F. Supp. 3d at 453.

Based on these standards and the testimony adduced at the suppression hearing, the Court concludes that the post-arrest search of the BMW was constitutional. Specifically, the Court credits the testimony that: (1) officers impounded the BMW from a public thoroughfare and brought it back to the precinct after arresting Defendant, the sole occupant, who did not have a valid driver's license; (2) the officers performed a permissible inventory search of the BMW and observed the Public Storage Card in the trunk; and (3) the officers retained the Public Storage Card as evidence, because they believed it might be significant to their investigation. Additionally, the Court acknowledges that, upon Defendant's request, the officers returned all non-pertinent

7

personal property to his girlfriend. Based on these facts the Court concludes that the post-arrest search of the BMW was lawful and denies the third prong of Defendant's motion to suppress.

The Court rejects Defendant's contention that the post-arrest search of the BMW was unconstitutional because it was performed without his consent. For the reasons outlined above, Defendant's consent was not necessary for law enforcement to conduct the post-arrest inventory search of the BMW.

### III. CONCLUSION

For the foregoing reasons, Defendant's motion to suppress is DENIED in its entirety. This matter shall proceed to trial, with jury selection beginning on December 5, 2022.

**SO ORDERED.**

Dated: December 5, 2022
Central Islip, New York

                                                /s/ (JMA)
                                                JOAN M. AZRACK
                                                UNITED STATES DISTRICT JUDGE